## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT

I, Bruce A. Sweet, United States Postal Inspector, being duly sworn, depose and state as follows:

### I.      INTRODUCTION

1. I have been employed as a Postal Inspector by the United States Postal Inspection Service ("USPIS") since January 2006.  I was assigned to the Prohibited Mail Narcotics Team in Philadelphia, Pennsylvania for approximately two years, and I have been assigned to the Prohibited Mail Narcotics/Miscellaneous Crimes Team in Manchester, New Hampshire since December 2012.  On these teams, I have been responsible for conducting investigations involving the transportation of controlled substances or proceeds/payments for controlled substances through the United States Postal Service ("USPS").  I have intercepted hundreds of USPS Priority Mail Express or Priority Mail parcels which were found to have contained controlled substances or the proceeds from the sales of controlled substances through the United States Mail.

2. I have received extensive training in criminal investigations, procedures and criminal law, and I have assisted senior postal inspectors and other law enforcement agents in numerous criminal investigations and in the execution of search warrants.  I have received training from the USPIS in the investigation of controlled substances and proceeds/payments for controlled substances being transported through the United States Mail. I have also received asset forfeiture training and have consulted with senior postal inspectors and asset forfeiture specialists.

3. I am a law enforcement officer of the United States within the meaning of Title 18 U.S.C. § 3061, and am empowered by law to conduct investigations and make arrests for offenses enumerated in Title 21 U.S.C. §841(a)(1), distribution of controlled substances, Title 21 U.S.C. §843(b), use of a communications facility in the commission of narcotics trafficking offenses, Title 21 U.S.C. §846, conspiracy to possess with intent to distribute and distribution of controlled substances and other federal offenses.

4. The information set forth in this affidavit is based on an investigation other law enforcement agents and I are conducting. This affidavit does not contain every fact known to me with respect to this investigation. Rather, it contains those facts I believe to be necessary to establish probable cause in support of the complaint.

## II.   PROBABLE CAUSE

5. In March of 2019, law enforcement in the Los Angeles area conducted an investigation into narcotics trafficking on the Darknet. As part of that investigation, law enforcement (LE) assumed ownership of a Wickr account belonging to a drug trafficker with the moniker of "Tenderwoodcock."

6. The Darknet is a network of secret websites that exist on an encrypted network. Access is not accessible via traditional search engines such as Google or Bing.

7. Wickr is a chat program that uses end to end encryption and has content expiring messages, photos, videos, and file attachments.

8. In late March 2019, the Wickr moniker "Team603Civic" contacted "Tenderoodcock," then under law enforcement control. "Team603Civic" was later identified as Codey Collins.

9. On or around April 1, 2019, Collins asked "Tenderwoodcock" when he would return to the Darknet to resume selling narcotics. "Tenderwoodcock" replied that he was only fulfilling

large shipments of narcotics, but would advise him when the regular shipments resumed. Collins wrote to "Tenderwoodcock," "Been waiting to line your pockets with some money lol… other than that business has picked up significantly, two of my guys got rid of a 1/2lb in two days."

10. On April 2, 2019, Collins messaged "Tenderwoodcock" on Wickr and asked how much a kilogram of methamphetamines would cost him. "Tenderwoodcock" replied a kilo would cost approximately $6,800 depending upon where the product would need to be shipped. "Tenderwoodcock" also replied that he would be willing to lower the price if Collins was to purchase a kilo on a regular basis and it depended upon how quickly Collins could move the product. Collins replied "My guys can get rid of a half LB in two to three days, I am confident in my clientele 100%... Because every now and then there is a few days where I have my guys on stand still while I'm waiting for more to come in, if I could keep my main guy consistently stocked you him and myself could make a lot of money."

11. Collins further wrote to "Tenderwoodcock," "He sold more than a hp for me in less than two days, and his people pick up be the b and oz every other day."

12. Collins went on to write to "Tenderwoodcock," "I only consult with people at least 15/20 years older than me because they know what good business is and how to keep their mouths shut… I listen intently to my elders that's why I've gone this long without ever having a criminal record."

13. On or about April 3, 2019, Collins asked "Tenderwoodcock" how much methamphetamine he could purchase for $5,000. "Tenderwoodcock" replied he would be willing to sell 1.5 lbs. of methamphetamines for $5,000.

14. On or about April 5, 2019, Collins agreed to purchase 1.5 lbs. of methamphetamine for $5,000 in bitcoin. On the same date, Collins sent "Tenderwoodcock" an address of "Codey Collins 4 Pondview Lane, Rochester, NH," for the methamphetamine to be sent.

15. Bitcoin is a cryptocurrency, or a form of electronic currency. Bitcoin is a decentralized digital currency without a central bank or single administrator that can be sent from user to user.

16. Through open-source searches, Collins was identified via a Facebook account. In one picture located on Facebook, a picture of a Honda Civic with New Hampshire license plate 411 3657 was located. Through Department of Motor Vehicle (DMV) records, the vehicle's owner was identified as KC of 4 Pondview Ln. Rochester, NH 03867. Through another Facebook picture a white male is seen taking a "selfie" of his upper body. The words "En▇▇▇▇" can be seen tattooed on the male's collar bone. A records check of Codey Collins shows his date of birth as ▇▇▇▇▇▇▇. A final photo from Facebook had a hand written note with the words "NH # TEAM 603 SAVAGE PATCH." The "TEAM 603" is similar to the Wickr moniker of "Team603Civic."

17. On April 8, 2019, "Tenderwoodcock" sent a Bitcoin wallet address, which was controlled by law enforcement, to Collins via Wickr. On the same date Collins replied "Funds have been sent my friend." Collins again reiterated his shipping information of "Codey Collins, 4 Pondview lane, Rochester, NH, 03867."

18. On April 9, 2019, Collins asked "Tenderwoodcock" for an update. "Tenderwoodcock" informed Collins that the parcels had been shipped that morning. Collins replied "You are a gentleman and a scholar." Collins later added "I've already got 2 qp's spoken for." Collins

went on to say he charges $3,000 for a quarter-pound of methamphetamine. Collins then thanked "Tenderwoodcock" for being a reliable business partner.

19. On April, 10, 2019, Inspectors in New Hampshire were told by Inspectors in Los Angeles of the Darknet transaction between "Tenderwoodcock" and Collins. Inspectors created two parcels with tracking numbers and put a sham substance in both parcels.

20. Law enforcement conducted a further search for Collins in open source databases. During a search, the screen name "603CivicKid" was located. Under that screen name, several movies were uploaded to a website. In the movies, a white male and female are shown having intercourse. The male appeared to be Codey Collins and the female appeared to be CW. CW was identified via Collins' Facebook page and using NH driver's license photos.

21. On April 11, 2019, an Inspector operating in an undercover capacity as a U.S. Postal Service Letter Carrier left a PS Form 3849, Delivery Notice, at 4 Pondview Ln Rochester, NH. The delivery noticed included the label numbers for the two parcels containing sham substance and the name and address the parcels were addressed to (Codey Collins 4 Pondview Ln Rochester, NH). The PS Form 3849 was left on the residence's front door and stated the parcels could be picked up at Rochester, NH Post Office on Allen Street.

22. At approximately 2:30 PM, surveillance at 18 Redden St. Dover, NH (address of where Collins and his girlfriend CW were believed to live) indicated CW's vehicle left the address. At approximately 2:55 PM, CW's vehicle entered the parking lot of the Rochester Post Office. CW exited the vehicle and entered the Post Office. Surveillance indicated there was a male, believed to be Codey Collins, sitting in CW's vehicle.

23. While in the Post Office, Inspectors were able to identify CW as she entered the Post Office. CW presented Postal Service employees with a PS Form 3849. Inspectors were able to

visually inspect the PS Form 3849 and identified the form as the form left earlier in the day at the 4 Pondview address in Rochester. Inspectors provided the two parcels to Postal Service employees and watched as CW took possession of the parcels from the employees and then leave the Post Office.

24. Law enforcement followed CW's vehicle out of the Post Office parking lot and then stopped the vehicle several miles away in Somersworth. CW and Collins were identified as the only two occupants of the vehicle.

25. After agents advised him that he was not under arrest and was free to leave at any point, Collins stated he was willing to speak with law enforcement. Collins admitted to ordering the two parcels that he and his girlfriend, CW, picked up at the Post Office. Collins admitted to paying $5,000 in Bitcoin for the parcels. Collins also admitted the parcels contained approximately 1.5-lbs. of methamphetamine.

26. Collins stated he tracked the parcels online to find out the status and location of the parcels. Collins added his mother told him the Post Office left a slip at her residence regarding the two parcels. Collins stated he and CW traveled to 4 Pondview Ln first and then to the Post Office.

27. Collins stated he ordered the parcels from "Tenderwoodcock" using Wickr. Collins added his screen name is "Team603civic."

### III.   CONCLUSION

28. Based on the facts described above, there is probable cause to believe that on or about April 1, 2019, through on or about April 11, 2019, within the District of New Hampshire and elsewhere, CODEY COLLINS did knowingly and intentionally attempt to possess with intent to distribute controlled substances, specifically, 50 grams and more of

methamphetamine, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A)(viii).

/s/ Bruce A. Sweet
BRUCE A. SWEET
United States Postal Inspector

Subscribed and sworn to before me
On this 11th day of February, 2020.

_____
HONORABLE ANDREA K. JOHNSTONE
United States Magistrate Judge